Case: 4:03-cv-00923-ERW    Doc. #: 67-2    Filed: 03/06/06    Page: 1 of 19 PageID #: 807

No. 05-6764

IN THE SUPREME COURT OF THE UNITED STATES

BILLIE JEROME ALLEN, PETITIONER

v.

UNITED STATES OF AMERICA

(CAPITAL CASE)

ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

BRIEF FOR THE UNITED STATES

PAUL D. CLEMENT
   Solicitor General
      Counsel of Record

ALICE S. FISHER
   Assistant Attorney General

ROBERT J. ERICKSON
   Attorney

   Department of Justice
   Washington, D.C. 20530-0001
   (202) 514-2217

**ATTACHMENT A**

## QUESTION PRESENTED

Whether, in a federal prosecution in which the death penalty is sought, the omission of eligibility factors from the indictment can constitute harmless error.

(I)

IN THE SUPREME COURT OF THE UNITED STATES

No. 05-6764

BILLIE JEROME ALLEN, PETITIONER

v.

UNITED STATES OF AMERICA

(CAPITAL CASE)

ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

BRIEF FOR THE UNITED STATES

OPINIONS BELOW

The en banc opinion of the court of appeals (Pet. App. 1-15) is reported at 406 F.3d 940. The panel opinion of the court of appeals (Pet. App. 16-35) is reported at 357 F.3d 745.

JURISDICTION

The judgment of the court of appeals was entered on May 2, 2005. A petition for rehearing was denied on June 22, 2005 (Pet. App. 36). On July 26, 2005, Justice Thomas extended the time within which to file a petition for a writ of certiorari to and

(1)

2

including November 19, 2005. The petition was filed on September 29, 2005. The jurisdiction of this Court is invoked under 28 U.S.C. 1254(1).

## STATEMENT

Following a jury trial in the United States District Court for the Eastern District of Missouri, petitioner was convicted of killing a person in the course of committing a bank robbery, in violation of 18 U.S.C. 2113(a) and (e), and committing murder in the course of using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. 924(c)(1) and (j)(1). He was sentenced to death on the firearm count and life imprisonment on the bank-robbery count. Pet. App. 2. The court of appeals affirmed his convictions and sentences. 247 F.3d 741 (8th Cir. 2001). This Court vacated and remanded for further consideration in light of its intervening decision in Ring v. Arizona, 536 U.S. 584 (2002). 536 U.S. 953 (2002). On remand, a panel of the court of appeals initially vacated petitioner's death sentence on the firearm count. Pet. App. 16-35. After granting rehearing en banc, the court of appeals affirmed. Id. at 1-15.

1. On March 17, 1997, petitioner and another individual, Norris Holder, robbed Lindell Bank & Trust in St. Louis. Wearing dark ski masks and armed with semiautomatic rifles, the two men rushed into the bank. The first man who entered immediately began firing shots at security guard Richard Heflin; Holder jumped over

3

the counter and took money from the tellers' drawers. Both rifles were discharged during the robbery. A total of 16 shots were fired, eight of which hit Heflin. Heflin died a short time later. After the robbery, the two men fled in a van. 247 F.3d at 756.

Petitioner and Holder had soaked the van in gasoline to make it easier to destroy once they had completed their getaway. As the van entered a nearby park, it burst into flames, apparently after one of the men flicked a cigarette lighter. Holder was on fire; after two park workers helped to extinguish the flames, he was arrested. Petitioner fled into the woods, where he encountered a park worker. After petitioner made up a story about why his hair had been burned, the park worker gave him a ride to the nearest light-rail station. Petitioner was arrested at his girlfriend's apartment that night, and he confessed to the crime the following morning. 247 F.3d at 756-757, 764-765.

2. On April 17, 1997, a grand jury in the Eastern District of Missouri indicted petitioner and Holder on one count each of killing a person in the course of committing a bank robbery, in violation of 18 U.S.C. 2113(a) and (e), and committing murder in the course of using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. 924(c)(1) and (j)(1). Pet. App. 37-38. The maximum sentence for each offense is death. The Federal Death Penalty Act (FDPA), 18 U.S.C. 3591-3598, establishes the procedures for the imposition of the death penalty for those

4

offenses.  Under the FDPA, a defendant is eligible for the death penalty for those offenses if the jury determines that the defendant acted with the specified level of intent, see 18 U.S.C. 3591(a)(2), and that one or more statutory aggravating factors are present, see 18 U.S.C. 3592(c), 3593(d).  It is undisputed that the indictment charged all of the elements of the underlying offenses; consistent with the government's practice at the time, however, the indictment did not allege any eligibility factors.  The government subsequently decided to seek the death penalty for defendants, and, pursuant to 18 U.S.C. 3593(a), filed notices of intent to seek the death penalty in which it listed the various eligibility factors on which it intended to rely.  Pet. App. 39-44.  The notice for petitioner alleged, inter alia, that petitioner intentionally inflicted serious bodily injury that resulted in the death of the victim, see 18 U.S.C. 3591(a)(2)(B), and that petitioner created a grave risk of death to other persons, see 18 U.S.C. 3592(c)(5), and committed the offense in expectation of pecuniary gain, see 18 U.S.C. 3592(c)(8).  Pet. App. 40, 41.

Before trial, petitioner filed a motion to strike the notice of intent to seek the death penalty, contending that the indictment was constitutionally deficient because it did not allege any eligibility factors.  The district court denied the motion.  Petitioner was found guilty on both counts.  During the sentencing phase, the jury was instructed on the eligibility factors; after unanimously

5

determining that the eligibility factors listed above had been proved beyond a reasonable doubt (and that the aggravating factors sufficiently outweighed any mitigating factors, see 18 U.S.C. 3593(e)), the jury recommended that petitioner be sentenced to death on the firearm count. Petitioner was accordingly sentenced to death on the firearm count and life imprisonment on the bank-robbery count. Pet. App. 2.

3.    The court of appeals affirmed petitioner's convictions and sentences. 247 F.3d 741 (8th Cir. 2001). As is relevant here, the court of appeals rejected petitioner's contention that the indictment was deficient. Id. at 761-764. The court explained that the indictment "charged an offense which expressly subjects a convicted defendant to a maximum punishment of death." Id. at 762. Although the court recognized that "every element of an offense must be charged in an indictment to satisfy the Fifth Amendment" (and that, under this Court's then-recent decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), the same was true for facts that increased the maximum penalty for a crime), it concluded that the eligibility factors were not elements because they "do not increase the sentencing range but rather provide the particularized stan-dards for choosing which of the alternative available sentences should be imposed." 247 F.3d at 763.

4.    While petitioner's petition for a writ of certiorari was pending, this Court issued its decision in Ring v. Arizona, 536

6

U.S. 584 (2002). In that case, the Court held that, for purposes of Apprendi, eligibility factors operate as the "functional equivalent of an element of a greater offense" and therefore must be found by a jury under the Sixth Amendment. Id. at 609 (citation omitted). The Court subsequently vacated the court of appeals' judgment in petitioner's case and remanded for further consideration in light of Ring. 536 U.S. 953 (2002).

5.   On remand, a panel of the court of appeals initially vacated petitioner's death sentence on the firearm count. Pet. App. 16-35. After granting the government's petition for rehearing en banc, however, the court of appeals unanimously affirmed. Id. at 1-15.

The court of appeals first held that, in light of Ring, the failure to include the eligibility factors in the indictment was erroneous. Pet. App. 3-5. Although Ring addressed only the Sixth Amendment question whether eligibility factors must be submitted to the jury, the court concluded that Ring "necessarily implies" a Fifth Amendment requirement that eligibility factors be included in the indictment as well. Id. at 3.

The court of appeals, however, then rejected petitioner's claim that the omission of eligibility factors from the indictment was "structural" error (i.e., an error necessitating automatic reversal). Pet. App. 5-8. At the outset, the court noted that, because petitioner had "presciently raised" his challenge to the

7

indictment before the district court, the more stringent plain-error standard of review was not applicable. Id. at 5. The court of appeals then noted that, in Arizona v. Fulminante, 499 U.S. 279 (1991), and Neder v. United States, 527 U.S. 1 (1999), this Court had identified only a limited class of errors as structural. Pet. App. 6-7. "We tend to think," the court of appeals stated, "that the Supreme Court meant for its lists of structural errors in Fulminante and Neder to be exclusive." Id. at 7. Even if that were not so, the court added, the holding of Neder was of "particular significance" because Neder was "the mirror image" of this case. Ibid. In Neder, the Court held that the omission of an offense element from the jury instructions does not constitute structural error. 527 U.S. at 8-15. The court of appeals reasoned that, "just as Neder was deprived of his Sixth Amendment right to have the petit jury determine an essential element of his offense, Allen was deprived of his Fifth Amendment right to have the grand jury decide whether to charge the statutory aggravating factors and the mens rea requirement that are the functional equivalent of elements of his offense." Pet. App. 7.

The court of appeals proceeded to determine that, under the test for assessing the harmlessness of constitutional errors on direct review established by Chapman v. California, 386 U.S. 18 (1967), the error in this case was in fact harmless. Pet. App. 8-14. The court explained that "[o]ur inquiry * * * is whether any

8

rational jury * * * would have found the existence of the requisite mental state and one or more of the statutory aggravating factors found by the petit jury if the grand jury had been asked to do so." Id. at 8. In order to "avoid unnecessary adjudication of constitutional issues," the court assumed, arguendo, that, in conducting harmless-error analysis, it could consider only "the evidence presented to the grand jury at the time it was asked to indict [petitioner]." Id. at 9.

On the basis of that evidence alone, the court of appeals concluded that any error was harmless. Pet. App. 9. The court determined that, if the grand jury had been asked to charge that petitioner created a grave risk of death to other persons, it would have done so. Id. at 12. The court noted that the grand jury testimony showed that petitioner and Holder had fired a total of 16 shots, some of which had ricocheted through the bank lobby; pointed a gun at one bystander's head and fired at another; and crashed a flaming van into a public park. Ibid. Because the court concluded that the grand jury would have charged the grave-risk-of-death aggravating factor, it did not consider whether the grand jury would also have charged the pecuniary-gain aggravating factor. The court then determined that the grand jury would also have charged that petitioner had intentionally inflicted serious bodily injury that resulted in the death of the victim. Id. at 13-14. The court noted that one witness had testified that Holder was the second

CASE: 4:03-cv-00923-ERW    Doc. #: 67-2    Filed: 03/06/06    Page: 11 of 19 PageID #: 817

9

robber to enter, not the first, and that an officer had testified that both defendants had identified petitioner as the shooter. Id. at 14.

## DISCUSSION

Petitioner contends (Pet. 6-15) that the court of appeals erred by holding that, in a federal prosecution in which the death penalty is sought, the omission of eligibility factors from the indictment constituted harmless error. While the decision of the court of appeals is correct, the courts of appeals are divided on whether the omission of an offense element (or sentence-enhancing fact) from a federal indictment can constitute harmless error. The United States will shortly be filing a petition for a writ of certiorari from the Ninth Circuit's decision in United States v. Resendiz-Ponce, 425 F.3d 729 (2005), which also presents that important and recurring issue. Because Resendiz-Ponce is a more suitable vehicle for resolution of the issue, this petition should be held pending the disposition of Resendiz-Ponce.

1.   The court of appeals correctly held that the omission of eligibility factors from the indictment constituted harmless error. The indictment in this case was constitutionally deficient because an eligibility factor is the equivalent of a fact that increases the penalty for a crime beyond the statutory maximum (and therefore the functional equivalent of an element of the offense), see Ring v. Arizona, 536 U.S. 584, 609 (2002), and because, in federal pros-

10

ecutions, an offense element (or its functional equivalent) must be charged in the indictment under the Grand Jury Clause of the Fifth Amendment, see, e.g., United States v. Cotton, 536 U.S. 625, 627 (2002).

Such an omission from the indictment, however, bears no relation to the limited category of pervasive and fundamental errors that this Court has held to be structural. See, e.g., Johnson v. United States, 520 U.S. 461, 468-469 (1997) (listing examples). In Neder v. United States, 527 U.S. 1 (1999), this Court held that the omission of an offense element from the jury instructions does not constitute structural error. Id. at 8-15. It necessarily follows that the omission of an offense element from the indictment does not constitute structural error either. Indeed, there are good reasons to believe that the type of omission at issue here constitutes a far weaker candidate for structural error than the type of omission in Neder. First, the Fifth Amendment right to an indictment by a grand jury, unlike the Sixth Amendment right to a trial by a petit jury, has not been incorporated against the States through the Fourteenth Amendment as an essential requirement of fundamental fairness. See Hurtado v. California, 110 U.S. 516, 538 (1884). Second, although the grand jury undoubtedly performs a vital protective function, the petit jury ultimately provides greater protection for the accused, insofar as the prosecutor has no obligation to present exculpatory evidence to the grand jury;

11

the accused has no right to present evidence at all; the grand jury decides whether to indict by majority vote; the grand jury need find only probable cause; and the grand jury's findings, if favorable to a defendant, are not accorded the finality of a petit jury's acquittal. Accordingly, the court of appeals correctly concluded, in reliance on Neder, that the omission of eligibility factors from the indictment could constitute harmless error. Pet. App. 5-8.

That conclusion is reinforced by this Court's decisions in United States v. Mechanik, 475 U.S. 66 (1986), and United States v. Cotton, 535 U.S. 625 (2002). In Mechanik, the Court held that a violation of Federal Rule of Criminal Procedure 6(d) -- namely, the simultaneous testimony of two government witnesses before the grand jury -- was susceptible to harmless-error review. See 475 U.S. at 70. Notably, the Court concluded that the error in question was in fact harmless when the petit jury had subsequently returned a guilty verdict, on the ground that the verdict "means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt." Ibid. Mechanik therefore suggests that the omission of an element (or sentence-enhancing fact) from the indictment is likewise harmless -- and that, in analyzing such an error for harmlessness, a court may properly consider whether the petit jury actually found that element at trial. Similarly, in

12

Cotton, the Court held that the failure either to allege drug quantity in the indictment or to obtain a finding on drug quantity by the petit jury did not constitute reversible plain error. See 535 U.S. at 631-634. Although the Court did not pass specifically on the question whether the third component of the federal plain-error inquiry (which is analogous to the harmless-error inquiry for preserved errors) had been satisfied, it concluded that the fourth component was not satisfied because any error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. Id. at 632-633. In so holding, the Court noted that the evidence concerning the sentence-enhancing fact was "overwhelming" and "essentially uncontroverted." Id. at 633. The Court's conclusion in Cotton that the omission of a sentence-enhancing fact from an indictment will not seriously affect the fairness, integrity, or public reputation of judicial proceedings "cuts against the argument that [such an omission] will always render a trial unfair" and thus should constitute structural error. Neder, 527 U.S. at 9.

As petitioner correctly notes (Pet. 6-7), however, the courts of appeals are divided on whether the omission of an offense element (or sentence-enhancing fact) from a federal indictment can constitute harmless error. The majority of courts of appeals to have considered the issue, like the court of appeals here, have held that such an omission is subject to harmless-error analysis.

13

See <u>United States</u> v. <u>Robinson</u>, 367 F.3d 278, 285-286 (5th Cir.), cert. denied, 543 U.S. 1005 (2004); <u>United States</u> v. <u>Higgs</u>, 353 F.3d 281, 304-307 (4th Cir. 2003), cert. denied, 543 U.S. 999 (2004); <u>United States</u> v. <u>Trennell</u>, 290 F.3d 881, 889-890 (7th Cir. 2002); <u>United States</u> v. <u>Cor-Bon Custom Bullet Co.</u>, 287 F.3d 576, 580-581 (6th Cir. 2002); <u>United States</u> v. <u>Prentiss</u>, 256 F.3d 971, 981-985 (10th Cir. 2001) (en banc); <u>United States</u> v. <u>Corporan-Cuevas</u>, 244 F.3d 199, 202 (1st Cir. 2001). The Third and Ninth Circuits, by contrast, have held, in decisions predating this Court's decision in <u>Cotton</u>, that such omissions constitute structural error and thereby necessitate automatic reversal. See <u>United States</u> v. <u>Du Bo</u>, 186 F.3d 1177, 1179-1181 (9th Cir. 1999); <u>United States</u> v. <u>Spinner</u>, 180 F.3d 514, 515-516 (3d Cir. 1999). That broader conflict warrants this Court's review in an appropriate case, because the underlying issue is both important and recurring.

2. The Solicitor General has authorized the filing of a petition for a writ of certiorari from the Ninth Circuit's decision in <u>United States</u> v. <u>Resendiz-Ponce</u>, 425 F.3d 729 (2005). In that case, the defendant was charged with attempting to reenter the United States after deportation, in violation of 8 U.S.C. 1326(a) and (b)(2). 425 F.3d at 731. Under Ninth Circuit law, one element of that offense is that the defendant have committed an "overt act" that constituted a substantial step toward reentering without consent. <u>Ibid.</u> The indictment did not expressly allege an "overt

14

act," but the petit jury was instructed concerning the "overt act" requirement, and it returned a guilty verdict. Relying on its earlier decision in Du Bo, the court of appeals held that "[f]ailure to allege an essential element of the offense [in the indictment] is a fatal flaw not subject to mere harmless error analysis." Id. at 732.

Resendiz-Ponce constitutes a more suitable vehicle than this case for plenary review. As a preliminary matter, this case involves the omission not of an element of the underlying offense, but of a factor determining eligibility for the death penalty -- which is the constitutional equivalent of a fact that increases the penalty for a crime beyond the statutory maximum. Although the better view is that the omission of offense elements and sentence-enhancing facts should be treated identically for purposes of determining whether such an omission can be harmless, it could conceivably be argued that the latter type of omission constitutes structural error even if the former does not. Indeed, a similar argument has been made in Washington v. Recuenco, No. 05-83 (cert. granted Oct. 17, 2005), in which the question presented is whether an error in enhancing a sentence based on a fact not found by the jury is, like the omission of an offense element from the jury instructions, susceptible to harmless-error analysis. This case therefore presents the harmless-error issue in a form that is less

15

characteristic of the broader conflict in the circuits than Resendiz-Ponce does.

Moreover, this case arises in the specialized context of a prosecution governed by the Federal Death Penalty Act (FDPA), 18 U.S.C. 3591-3598. In FDPA cases tried before this Court's decision in Ring, the government did not allege eligibility factors in the indictment itself, but it was required by statute to give the defendant notice of the factors on which it intended to rely a "reasonable time" before the trial began. See 18 U.S.C. 3593(a). Petitioner received the statutorily required notice in this case and, to the extent that one of the functions of an indictment is to provide the defendant with sufficient notice to enable him to prepare his defense at trial, see, e.g., Hamling v. United States, 418 U.S. 87, 117 (1974), it is indisputable that the statutorily required notice fulfilled that function here. Further, as petitioner appears to recognize (Pet. 6), there is no conflict among the courts of appeals on the narrower question whether, in a federal prosecution in which the death penalty is sought, the omission of eligibility factors from the indictment can constitute harmless error. Like the court of appeals below, the Fourth and Fifth Circuit have recently held that such an omission is susceptible to harmless-error analysis -- and this Court subsequently denied review in each case, notwithstanding the existence of the broader conflict discussed above. See Robinson, 367 F.3d at 285-286;

16

Higgs, 353 F.3d at 304-307; cf. United States v. Barnette, 390 F.3d 775, 784 (4th Cir. 2004) (following Higgs), vacated and remanded on other grounds, 126 S. Ct. 92 (2005); United States v. Davis, 380 F.3d 821, 829-830 (5th Cir. 2004) (following Robinson), cert. denied, 125 S. Ct. 2245 and 125 S. Ct. 2247 (2005).

Finally, as a practical matter, the narrower question whether the omission of eligibility factors in a capital case can constitute harmless error is of limited prospective importance. As the court of appeals noted (see Pet. App. 12 n.3, 15), the policy of the Department of Justice in capital cases since this Court's decision in Ring has been to ensure that eligibility factors are alleged in the indictment, as well as in the separate notice required by statute, in any case in which the death penalty is sought. Because the Department of Justice's guidelines require the approval of the Attorney General before the death penalty can be sought (and consultation with the Capital Case Unit of the Criminal Division before the statutorily required notice can be filed), see United States Attorneys' Manual §§ 9-10.020, 9-10.030 (2001), it is extremely unlikely that any future case will arise in which eligibility factors are omitted from a federal indictment. Indeed, the government is aware of no such case tried since this Court's decision in Ring. It is therefore unnecessary for the Court to grant

17

plenary review in this case rather than (or in addition to) Resendiz-Ponce.[*]

## CONCLUSION

The petition for a writ of certiorari should be held pending this Court's disposition of United States v. Resendiz-Ponce, and then disposed of accordingly.

Respectfully submitted.

> PAUL D. CLEMENT
>   Solicitor General
>
> ALICE S. FISHER
>   Assistant Attorney General
>
> ROBERT J. ERICKSON
>   Attorney

FEBRUARY 2006

---

[*] The petition for a writ of certiorari in Resendiz-Ponce is due on February 8, five days after the filing of this brief. We will provide petitioner with a copy of the petition in Resendiz-Ponce upon filing.