UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NORRIS HOLDER, )
)
Movant, )
) No. 4:03CV0923 ERW
vs. )
) ***This is a Capital Case***
UNITED STATES OF AMERICA, )
)
Respondent. )

**MOVANT'S REPLY TO GOVERNMENT'S
RESPONSE TO MOVANT'S POST-HEARING BRIEF**

COMES NOW movant, Norris Holder, by and through counsel, Christopher E. McGraugh

and Michael J. Gorla, and for his reply to the government's response to movant's post-hearing brief,

states as follows:

**Introduction**

Movant reasserts and incorporates by reference the arguments set forth in his post-hearing

brief which fully address and refute many of the points set forth in the government's response.

Movant believes, however, that supplementation and clarification of the following points is

warranted.

**12A. - Violation of the Fifth Amendment Indictment Clause**

As set out in the government's response, the Supreme Court denied co-defendant Billie

Allen's petition for a writ of certiorari, declining to review the Eighth Circuit's en banc decision in

*United States v. Allen*.[1]   Although the indictment in movant's case is defective because it fails to

---

[1]406 F.3d 940 (8th Cir. 2005), *cert. denied*, 127 S.Ct. 826 (2006).

1

allege at least one statutory aggravating factor, the law in this circuit is that said defect is subject to

harmless error analysis, and is harmless beyond a reasonable doubt.[2] Despite the *Allen* decision, the

question of whether the omission of an element of a criminal offense from a federal indictment

constitutes a structural defect is an unsettled issue, one that has been recently sidestepped by the

United States Supreme Court in *United States v. Resendiz-Ponce*.[3]

The Supreme Court granted certiorari in *Resendiz-Ponce* to answer the specific question of

whether "the omission of an element of a criminal offense in a federal indictment was a structural

error, or one subject to harmless error analysis." The court avoided the issue by deciding that the

indictment in *Resendiz-Ponce* was not defective.[4]

Justice Scalia dissented from that finding, and in a harbinger of things to come, stated as

follows:

> "My dissenting view that the indictment was faulty (a point on which we requested supplemental briefing) puts me in the odd position of being the sole Justice who must decide the question on which we granted certiorari: whether a constitutionally deficient indictment is structural error, as the Ninth Circuit held, or rather is amenable to harmless-error analysis. I cannot vote to affirm or to reverse the judgment without resolving that issue. Since the full Court will undoubtedly have to speak to the point on another day (it dodged the bullet today by inviting and deciding a *different* constitutional issue-albeit, to be fair, a narrower one) there is little in my setting forth my views in detail. It should come as no surprise, given my opinions in *United States v. Gonzalez-Lopez*, 547 U.S. _____, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006), and *Neder v. United States*, 527 U.S. 1, 30, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (opinion concurring in part and dissenting in part), that I would find the error to be structural.[5]

---

[2]*Id*. at 945-48.

[3]_____ U.S. _____, 127 S.Ct. 782, 785 (2007).

[4]*Id*. at 789-90.

[5]*Id*. at 793 (Scalia, J., dissenting).

Given the likelihood that the specific issue raised in this claim will be addressed by the Supreme Court in the near future, movant maintains his position that the indictment herein, specifically deemed defective by the Eighth Circuit in *Allen*,[6] constitutes a structural defect warranting relief.

The government maintains that movant has procedurally defaulted this claim at both his trial and on direct appeal. Movant has set out in his post-hearing brief his position that both the miscarriage of justice, and cause and prejudice exceptions to the procedural default doctrine apply to excuse any procedural defaults. Rather than repeat the same analysis, movant refers the Court to those sections of his post-hearing brief.[7]

### 12B. - Improper Submission of Pecuniary Gain Aggravator

The government asserts that the pecuniary gain statutory aggravator can apply in situations other than those involving murder(s)-for-hire. Movant disagrees, and believes that his position is supported by the decisions rendered in *United States v. Chanthadara*[8] and *United States v. Bernard*.[9] Assuming, *arguendo*, that the government's position is correct, the pecuniary gain aggravator was still improperly submitted in movant's case.

The government concedes in its response that *Chanthadara* and *Bernard* mandate "that the jury be required to find that 'the offense' which the defendant expects to receive pecuniary gain from

---

[6]406 F.3d at 942-43.

[7]*See* Movant's Post-Hearing Brief, 5-6, 16-21.

[8]230 F.3d 1237 (10th Cir. 2001).

[9]299 F.3d 467 (5th Cir. 2002).

is the homicide, not the robbery."[10]  The government attempts to justify the submission of the pecuniary gain aggravator in movant's case on the basis that the bank guard was killed "before" any money was taken.  Thus, opines the government, movant and his co-defendant, Billie Allen, expected to receive pecuniary gain from the homicide rather than the robbery.  But, this is simply not the case.  The pecuniary gain involved in this case, the bank's money, was the result of the actual robbery - taking the money from the bank tellers.  No pecuniary gain directly resulted from the killing of the bank guard.  Thus, the pecuniary gain aggravating factor was not applicable to movant's case.[11]

Further, under the government's interpretation of *Chantadara* and *Bernard*, movant's jury should have been specifically instructed that, in order to find the existence of the pecuniary gain statutory aggravator, the government must prove that movant committed the killing or murder in the expectation of the receipt of pecuniary gain.  In fact, this is how the jury was instructed in *United States v. Bolden*,[12] a subsequent bank robbery-murder case tried in the Eastern District of Missouri; however, the jury in movant's case was not so instructed.  The jury was told that in order to establish the pecuniary gain aggravator, the government had to prove that "the defendant committed ***the offense*** in the expectation of anything in the form of money, property, or anything else having economic value, benefit, or advantage."[13]  The words "the offense" are ambiguous at best, and given

---

[10]Government's Response, 10.

[11]*See United States v. Allen*, 357 F.3d 745, 750-51 (8th Cir. 2004), rehearing en banc granted, judgment vacated (May 11, 2004).

[12]*United States v. Bolden*, No. S1-4:02CR557 CEJ.

[13]*See* Government's Response, 12 (emphasis added).

the fact that movant's co-defendant, Billie Allen, actually shot and killed the guard, movant's jury most likely interpreted "the offense" to mean the bank robbery. Again, even if the pecuniary gain aggravator could be applied to bank robberies in which a killing occurred, said aggravator was still improperly submitted in movant's case.

The government argues, in the alternative, that this claim is procedurally barred and that relief should be denied on that basis. Movant has adequately set out in his post-hearing brief how and why the evidence adduced at the hearing supports the existence of cause and prejudice excusing any procedural default. Rather than repeat those arguments, movant refers the Court to those sections of his post-hearing brief.[14]

**Ineffective Assistance of Counsel**

**12C(b) - Conceding Guilt of a Capital Offense in Opening and Closing Statements**

**12C(c) - Advising Movant to Testify When, By Doing So, Movant Admitted**

**Guilt of a Capital Offense**

In support of its position that movant was not rendered ineffective assistance of counsel as asserted in Claims 12C(b) and (c), the government opines that neither Mr. Shaw's opening or closing statements nor movant's testimony conceded movant's guilt of a capital offense. According to the government, Mr. Shaw had a well thought out and crafted trial strategy - to concede guilt on the lesser included offense of non-capital bank robbery based on movant's lack of mens rea, and contest his guilt on the capital offenses. The government's position is flawed in a number of respects.

First, the requisite mental element to find movant guilty of a capital offense was that movant was aware of a serious risk of death attending his conduct. It is plain from Mr. Shaw's opening and

---

[14]*See* Movant's Post-Hearing Brief, 10-15.

5

closing statements that he was under the mistaken impression that the mens rea needed to find movant guilty of a capital offense was that he either intended or foresaw that someone would be killed during the course of the bank robbery.  Mr. Shaw repeatedly stressed to the jury, both in his opening statement and closing argument, that movant should be acquitted of a capital offense because he neither shot the guard nor believed that anyone was going to be hurt during the robbery.[15] The government is fully aware that intending or believing that someone could be hurt during the course of a robbery is not the required mental element.  Edward Dowd, the United States attorney at the time of movant's trial, emphasized that fact throughout the course of his closing argument.[16]

Second, it is clear from the testimony adduced at the evidentiary hearing that Mr. Shaw was unaware that Count One charged a capital offense.  He believed that movant was charged with two different crimes: bank robbery and murder, and that only the second count was a capital offense. Jennifer Herndon and Richard Burr offered an abundance of testimony at the evidentiary hearing that this was, in fact, Mr. Shaw's impression of the charges.[17]  Further, Norris Holder testified at his deposition that Mr. Shaw led him to believe that he was facing two charges, bank robbery and murder, and that only the latter carried the possibility of the death penalty.[18]

One of the most telling signs that Mr. Shaw misunderstood the charges are the motions for judgment of acquittal which he filed at the close of the government's case and at the close of all the evidence.  Both motions read as follows:

---

[15]Tr. Transcr. Vol. 1:65, 67; Vol. 7:80, 85, 87.

[16]Tr. Transcr. Vol. 7:41, 42, 98.

[17]Hrg. Transcr. Vol. I:112; Vol. II:10-13, 15, 34-35, 167, 196-97, 211.

[18]Holder's Depo. 52-53, 55.

Comes now Defendant Norris Holder, by and through his attorneys, Charles M. Shaw Law Firm, and, at the conclusion of the Government's evidence, moves the court for a judgment of acquittal for the following reasons:

1.      The evidence adduced is insufficient to sustain a conviction of the Defendant as to the crime charged and any and all lesser included offenses.

2.      As to Count II, the Government failed to make a prima facie case as to Count II of the indictment in that there was no evidence to sustain the charge of malice aforethought which is the essential element which elevates the killing of an individual to the intentional status of Murder under Count II of the indictment.[19]

The fact that said motions do not include a paragraph alleging that the government failed to make a prima facie case on Count One because it failed to prove the necessary mens rea destroys the government's theory that Mr. Shaw was aware that Count One charged a capital offense and that his strategy was to admit the lesser included offense of bank robbery while contesting the capital offense.  If Mr. Shaw's theory was as proposed by the government, he would have surely included a similar request for judgment of acquittal on Count One arguing, as he did on Count Two, that the requisite mens rea that makes Count One a capital offense was lacking.

The government is adamant that movant did not admit to a capital crime during his testimony, but instead, admitted to the non-capital lesser included offense of bank robbery.  This is simply not true.  A review of movant's trial testimony, particularly his cross-examination by then United States Attorney Edward Dowd, shows that movant admitted each and every element of the offense, including the fact that he was aware that there was a grave risk of danger to everyone in the bank.[20]

---

[19]Movant's Exb. 4 & 5.

[20]Tr. Transcr. Vol. 6:130-34, 144, 170-73.

The position the government now takes, that movant did not admit to a capital case during his testimony, differs radically from the position that the government took at the time of trial. Mr. Dowd adamantly and vigorously argued that movant, through his testimony, admitted guilt of the capital offenses charged in Counts One and Two.[21] He harped on the fact that, given movant's conduct in entering the bank heavily armed with an assault rifles and wearing a bulletproof vest, that movant had to be aware that his conduct created a serious risk of death to the people inside the bank.[22] He hammered on the fact that the mental element that the mens rea was not as outlined by Mr. Shaw in his closing argument, and that movant did not have to intend or believe that someone was to be hurt during the course of a robbery in order to be guilty of the capital offenses charged in the indictment.[23]

Despite the position it took at trial, the government has now reversed course and is taking the opposite position - that Mr. Shaw did not concede guilt in his opening and closing statements and that movant did not admit his guilt of a capital offense during the course of his testimony. The government is, in fact, advocating inconsistent positions in order to secure its conviction in this case, a position which due process prevents it from taking.[24]

---

[21]Tr. Transcr. Vol. 7:41-42, 64, 102-03.

[22]*Id*. at 42-43, 95.

[23]*Id*. at 41.

[24]*See Smith v. Groose*, 205 F.3d 1045 (8th Cir. 2000) (the state's use of inconsistent prosecutorial theories violated Smith's due process rights).

The government cites the case of *Florida v. Nixon*[25] in support of its position that Mr. Shaw's strategy in conceding guilt on the bank robbery charge and focusing on the penalty phase evidence to save movant's life was effective and reasonable; however, there are major differences between *Nixon* and movant's case.

First, as discussed earlier, Mr. Shaw was acting under the mistaken belief that movant was charged with a non-capital bank robbery charged in Count One and a murder charge in Count Two. He did not realize his mistake until after the instruction conference when he asked Ms. Herndon "What happened to the murder charge?"[26]  Accordingly, when Mr. Shaw conceded movant's guilt on the bank robbery charge, he did not know that he was conceding his guilt on a capital offense.

Second, while Nixon's counsel focused on the mitigating evidence adduced at the penalty phase in an attempt to save Nixon's life, Mr. Shaw did no such thing.  As testified to by Ms. Herndon and Ms. Tatelli, Mr. Shaw had absolutely no interest in the mitigation evidence presented in the penalty phase of movant's trial.[27]  He simply got up at the penalty phase closing argument and argued that movant's life should be spared because he personally did not shoot the bank guard.  He even argued, as he did without success in the guilt phase, that movant did not fire his gun in the bank, a fact convincingly disputed by the ballistics evidence adduced during the guilt phase of movant's trial.  While Nixon's counsel's strategy was consistent and reasonable, Mr. Shaw's was not.

---

[25]543 U.S. 175 (2004).

[26]Hrg. Transcr. Vol II:15.

[27]Hrg. Transcr. Vol. I:14-17, 118-19, 124-25.

9

The government also complains that movant cannot show that he was prejudiced by counsel's strategy because, due to the overwhelming evidence, it would have been futile for him to deny his participation of the bank robbery. In advancing this position, the government fails to address the prejudicial aspects of movant's testimony as outlined in his post-hearing brief.[28]   During his testimony, movant came across as combatant, unremorseful, indifferent, and as someone looking to avoid responsibility.[29]   In addition, Mr. Shaw elicited from movant that he never fired his weapon during the course of the bank robbery and constantly stressed that theory during his opening and closing statements. It was disastrous, given the uncontroverted ballistics evidence which showed that there were a number of spent shells that could not have come from Allen's gun but could have been fired from movant's gun. Mr. Shaw set his client out to be branded as an unremorseful liar, a person unwilling to take responsibility in any way for what occurred, and greased the skids for him to be sentenced to death.

WHEREFORE, for each and all of the reasons contained herein and in movant's post-hearing brief, movant prays that this Court grant him relief from his unconstitutional conviction and sentence of death.

---

[28]Movant's Post-Hearing Brief, 27-28.

[29]Hrg. Transcr. Vol. I:130, 135.

Respectfully submitted,

/s/ Christopher E. McGraugh
CHRISTOPHER E. MCGRAUGH, #25278
Leritz, Plunkert & Bruning, P.C.
One City Center, Suite 2001
St. Louis, Missouri 63101
(314) 231-9600
(314) 231-9480 - Facsimile
E-mail: cmcgraugh@leritzlaw.com

/s/ Michael J. Gorla
MICHAEL J. GORLA, #3251
720 Olive Street, Suite 1630
St. Louis, Missouri 63101
(314) 621-1617
(314) 621-7448 - Facsimile
E-mail: mjgorla@msn.com

*Counsel for Norris Holder*

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2007, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:  Mr. Steven Holtshauser and Mr. Joseph M. Landolt, Assistant United States Attorneys, 111 South 10th Street, 20th Floor, St. Louis, Missouri 63102.

/s/ Michael J. Gorla
Michael J. Gorla, #3251
Attorney for Norris Holder
720 Olive Street, Suite 1630
St. Louis, Missouri 63101
(314) 621-1617
(314) 621-7448 - Facsimile
E-mail: mjgorla@msn.com

11