UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NORRIS HOLDER, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | No. 4:03CV0923 ERW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | ***THIS IS A CAPITAL CASE*** |
| Respondent. | ) | |

### <u>GOVERNMENT'S RESPONSE TO MOVANT'S MOTION TO ALTER<br>OR AMEND JUDGMENT PURSUANT TO RULE 59(e)</u>

COMES NOW, the United States of America, by and through Catherine L. Hanaway, United States Attorney for the Eastern District of Missouri, and Steven E. Holtshouser and Joseph M. Landolt, Assistant United States Attorneys for said District, and responds to movant's motion to alter or amend judgment pursuant to Rule 59(e) and states, as follows:

### **1. Standard of Review in a Rule 59(e) Motion**

The Eighth Circuit has held that "Rule 59(e) motions serve a limited function of correcting manifest errors of law or fact or to present newly discovered evidence."  <u>Innovative Home Health Care, Inc. V. P.T.-O.T. Associate of the Black Hills</u>, 141 F.3d 1284, 1286 (8th Cir. 1998).  Such motions are also not proper vehicles for raising new arguments.  <u>Capitol Indemnity Corp. V. Russellville Steel Co., Inc.</u>, 367 F.3d 831, 834 (8th Cir. 2004); <u>Concordia College Corp. V. W.R. Grace & Co.</u>, 999 F.2d 326, 330 (8th Cir. 1993).  The Eighth Circuit recently held that Rule 59(e) "cannot be used to present new arguments that could have been raised prior to judgment."  <u>Howard v. United States</u>, 533 F.3d 472 (8th Cir. 2008).  "Rule 59(e) allows for reconsideration; it does not permit parties to effectively 're-argue a case.'"  <u>Id</u>.  A court may deny

1

a Rule 59(e) motion on that ground alone.  Id.

Much has been written in this case already.  From the initial motion and response, to the discovery process, the hearing, post-hearing briefs and the Court's Memorandum, the facts and law applicable to Holder's claim have been thoroughly explored.  The briefs span hundreds of pages.  Holder's motion under Rule 59(e) adds next to nothing new to the litigation in this case and the Government will not further lengthen the record by re-stating its prior arguments or this Court's disposition of those arguments.  Holder essentially re-argues his prior motion and this motion should be denied on that basis alone.  Holder also should not be permitted to present new arguments that were not presented below.

### 2. Defense Opening and Closing and Holder's Testimony

Holder spends much time re-hashing the evidence of which this Court was obviously cognizant.  He fails to identify evidence which this Court did not consider or new evidence which was unavailable previously.  In sum, it was far from clear at the start of this case what the final jury instructions would provide regarding the mens rea required to find Holder guilty of the capital counts.  Even on appeal, the matter was still hotly contested.  The fact that the Government ultimately prevailed on the issues did not render Mr. Shaw's legal judgment erroneous at the time.  It is only in the distorting effect of  hindsight to now claim Mr. Shaw based his actions on a mistake of law.  However, whether specific intent to kill or awareness of a serous risk of harm would be the ultimate standard, the strategy adopted at the start of the trial was wise and beneficial to Holder's attempts to save his life.  That strategy was to candidly admit the obvious, i.e., that Holder participated in this robbery, but to maintain that Holder never intended to harm anyone.  The beauty of this strategy was that it gave Holder his best chance at

avoiding death eligibility and allowed Mr. Shaw to lay the foundation of his consistent penalty phase strategy.  It was in furtherance of that strategy that Mr. Shaw subjected the Government's guilt phase evidence to challenge in an effort to create any doubt about the proof regarding Holder's conduct and state of mind inside the bank.  More than ten years later, Holder fails to propose a viable alternative strategy, because there was none.

This Court correctly held that Mr. Shaw's actions did not concede his guilt of all elements and thus render him eligible to face the death penalty and this Court correctly held that the strategy chosen was not only not deficient but "the best strategy . . . to be credible with the jury."  Memorandum and Order at 52 (Doc. 87).  This Court  correctly held that Mr. Shaw's advice that Holder testify and the content of Mr. Shaw's closing argument were not "objectively unreasonable." Id. at 62.  The fact that other counsel with far less capital and trial experience than Mr. Shaw disagreed with his approach does not come close to rendering it deficient.

Although this Court did not make an alternative finding regarding prejudice, the Government disagrees that the presumed prejudice standard of United States v. Cronic, 466 U.S. 648 (1984) should apply.  The Eighth Circuit agreed in the context of similar allegations in Malcom v. Houston, 518 F.3d 624 (8th Cir. 2008).  Prejudice has not been shown by Holder, because he has failed to put forth an alternative strategy that was reasonably probable to produce a different outcome but for the alleged deficient performance.

Holder fails to demonstrate that this Court made a mistake of fact.  He merely disagrees with the conclusions which this Court draws from the facts.  Likewise, he does not assert a mistake of law.  He merely disagrees with this Court's legal findings.  Thus, he is not entitled to relief under Rule 59(e).

3

### 3. Ballistics Expert

This Court aided Holder by presuming that his expert, if one existed and if one had been called, would have testified that the three shell casings (not bullets) could not have come from Holder's weapon.[1]  This was a generous assumption where Holder failed to present any evidence in support of his §2255 motion that any ballistics expert would have so testified.  However, assuming that Mr. Shaw was deficient in failing to obtain and call such an expert, an assumption which the government does not concede, this Court correctly held that Holder was not prejudiced by said failure.  There was no direct evidence that any of the bullets that came from the body of Richard Helfin came from Holder's gun, a fact established by Mr. Shaw's cross-examination, and the bank teller testified that the second robber to enter the bank fired in their general direction, not at the guard.  Thus, regardless of whether Holder fired his weapon in the bank, he could still maintain that he did not hurt anyone and did not expect that anyone would get hurt - facts which were both exculpatory and mitigating.  This Court correctly found that Holder had failed to meet his burden of demonstrating prejudice in either the guilt or penalty phases from Mr. Shaw's failure to consult a ballistics expert.

Now, for the first time, Holder claims that he was prejudiced by the failure of his counsel to confirm Mr. Stubits' opinion.  A Rule 59(e) motion is not intended to provide Holder with an opportunity to begin adding to or amending the claims in his §2255 petition.  Any new claims

---

[1]A more helpful opinion would have been that Mr. Stubits was wrong concerning Allen's rifle and that the three shell casings could have come from Allen's rifle thus corroborating Holder's claim that he did not fire his weapon in the bank.  However, whether an expert could have given such an opinion is speculative and no expert could have neutralized the bank teller's testimony.  At least the court in Wainwright v. Lockhart, 80 F.3d 1226 (8th Cir. 1996), had an actual alternative expert opinion to evaluate.  Here, Holder offers nothing more than conjecture and speculation.

have not been subjected to discovery, an adversarial hearing or briefing.  Any new claims would also be barred by the one-year statute of limitations under the AEDPA.  This Court's determination could not have been erroneous with respect to a ground which was never raised and it is not based on any new evidence which could not have been previously discovered.  This component of Holder's motion should be rejected.

Alternatively, Holder's logic is that had his counsel independently confirmed that three of the shell casings could not have come from Allen's rifle  – and that those three could have come from Holder's rifle and that there were only two rifles in the bank –  counsel would not have pursued a strategy built around Holder denial that he fired his weapon in the bank. Holder's logic stops there, because he fails to proffer an alternative strategy.  Under the circumstances, with or without independent confirmation, Holder was still faced with a less than certain finding by Mr. Stubits concerning the three shell casings as well as the testimony of the bank teller.  His strategy was not flawed, because Mr. Stubits was less than certain in his finding, the jury was not required to believe Mr. Stubits[2] or the bank teller and, the jury could have credited the testimony of Holder.  Moreover, any doubts about who to believe could have been resolved by the jury in favor of a life sentence.  Hindsight is not the standard.   As with the claim that Mr. Shaw was ineffective for failing to produce an expert to testify that the three shell casings could not have come from Holder's gun, the outcome of the guilt and penalty phases would not have been different if an independent expert had confirmed that the three shell casings could have or did in fact come from Holder's rifle.

---

[2]Mr. Stubits was impeached by the fact that this component of his opinion was not contained in any written report.

**4. Mitigation Investigation re Remorse Witness**

Holder initially claimed that a witness who shared a cell on separate occasions with Allen and Holder would have benefitted Holder in four ways.  In his Rule 59(e) motion, Holder now limits his argument to the issue of remorse only.  Specifically, he argues that this Court committed manifest legal error in finding that trial counsel's failure to interview and call (an as yet unidentified) witness to testify that Holder was remorseful about the killing of the guard was neither deficient nor prejudicial.  Holder essentially re-argues this point and fails to identify any specific error which this Court made.

An FBI report was generated concerning what this witness heard and it was produced to the defense.  There is no suggestion that the report was incomplete.  As to Holder's remorse, the witness stated to the FBI: "Holder also told [the witness] that he could not watch the guard's funeral on television.  Holder appeared remorseful."  This Court noted that this testimony would not have been relevant to remorse.  Memorandum and Order at 72n.12.  Holder did not state that he was remorseful - he only stated that he could not watch the funeral on TV, which is not necessarily indicative of remorse.  The witness' conclusion that Holder "appeared" remorseful may not have been admissible, but it was ambiguous at best.  Given the context of the statement, it is just as likely that Holder was sorry the guard was shot because he was then facing a murder charge as it was that Holder was truly sorry that he had caused the guard's death.  Moreover, as the Court also noted, the testimony would have been cumulative of Holder's other witnesses who provided an "abundance of testimony to that effect."  Id.  The Court also agreed with the Government's assertions that the witness' questionable credibility made trial counsel's decision not to call the witness a reasonable decision.  Id. at 74.  For the same reason, this Court found no

prejudice in failing to call this person as a witness - the subject of remorse was covered thoroughly by other witnesses and this one witness would not have produced a different outcome.  Id. at 73. See also, id. at 75 (failure to call the witness at the penalty phase).

This Court did not err in refusing to grant a hearing on this issue where the record supported the finding that Holder was not entitled to relief.  Trial counsel Jennifer Herndon testified at the hearing and could have been asked whether she was aware of this witness and she was more responsible for the penalty phase presentation than Mr. Shaw.  Mr. Shaw cannot be questioned because he is deceased - but he provides a convenient scapegoat for Holder.

### 5. Mental Health Investigation

¶12(C)(f) of Holder's §2255 motion was very specific as to the ineffective assistance claimed.  Holder claimed that his trial counsel were ineffective in failing to fully explore the question of his brain functions and possible brain damage through expert Dr. Anthony Semone. Holder claimed that a more thorough pursuit of Dr. Semone would have produced guilt and penalty phase evidence that would have changed the outcome.  This Court rejected Holder's contention without a hearing.  This Court noted that defendant's expert, Dr. Stephen Rothke, who was a neuropsychologist, had conducted a full mental examination of  Holder and had access to all pertinent facts, including health and other records.  Dr. Rothke also had the benefit of the results of another defense expert, Dr. Thomas Reidy, and the Government's independent neuro-psychological testing conducted by Dr. Richard Wetzel.  Neither Dr. Rothke nor Dr. Wetzel found any deficits which impacted Holder in the context of the crime.  Dr. Rothke found that Holder was a "cognitively intact individual."  Considering the information that trial counsel possessed, this Court found that trial counsel had not acted unreasonably in failing to further

utilize Dr. Semone.[3]  Memorandum and Order at 76.  This finding is not erroneous and relief under Rule 59(e) is not warranted.

This Court also found that Dr. Semone's testimony would not have impacted the outcome.  Therefore, even if trial counsel had acted deficiently in respect to Dr. Semone and evidence of brain damage, his opinion could not have impacted the outcome.  In fact, the factual evidence of Holder's cognition was so great that any attempt to overcome it with expert testimony from Dr. Semone would have damaged the credibility of other, more compelling, arguments that Holder put before the jury in mitigation.  Memorandum and Order at 78-79.

Now, Holder seeks to expand his claim to include the reasonableness of the entire mitigation investigation.  This violates the AEDPA statute of limitations on capital habeas claims.  He submits lengthy affidavits from anti-capital punishment lawyers and a psychologist who specializes in mitigation investigations for capital murderers.  There has been no showing whatsoever that their information is newly discovered or why, in the exercise of due diligence, it could not have been discovered and submitted in support of his §2255 motion.  All three essentially amount to expert opinions about the work performed by trial counsel and their investigators.  Relying on these, Holder essentially attempts to expand the scope of his claim from the failure to call Dr. Semone to an evaluation of every aspect of the mitigation case.  Holder no claims that "crucial mitigation evidence regarding petitioner's mental health which

---

[3]Dr. Semone had been contacted by trial counsel and his availability was known to them.  Thus, this case does not present a failure to investigate Holder's mental status or to identify potential experts.  Trial counsel had to strategically choose between the benefit that Dr. Rothke brought to the mitigation case and the internal inconsistency that Dr. Semone would have brought to Holder's case together with the rebuttal of Dr. Wetzel.  Dr. Wetzel was not ultimately called by the Government, in part because trial counsel did not present any convincing evidence of brain dysfunction on the part of Holder.

was readily available to trial counsel went unexplored and was therefore never presented to the jury." Holder Rule 59(e) Motion at 28 (Doc. 90).

Holder's experts seek a common goal, which is to supplant the Strickland standard for evaluating ineffective assistance claims with a self-serving and self-defined so-called "standard of care in capital cases." They essentially seek to replace the judgement of this Court – the Court that actually tried this case – as to the reasonableness of trial counsel's decision and the impact on the outcome with their own judgment. These expert opinions amount to lectures to this Court on mitigation investigations and evidence. In the guise of expert opinions, these affidavits continue to re-argue the points made by Holder's habeas counsel and to raise new points. None of these three has any factual knowledge relevant to this case, none is impartial and none has even met Holder. Fortunately, neither the ABA nor these anti-capital punishment practitioners determine ineffective assistance of counsel claims. These affidavits deserve no weight and should not be considered part of the record in this case. Nothing in the Rule 59(e) motion warrants correction of this Court's Memorandum and Order.

Woefully absent, even at this late date,  is a clear identification of what evidence was not explored, what evidence was not presented, and how its presentation to the jury would have impacted the outcome. Holder asks this Court to imagine what the evidence was and speculate as to its impact. The fact remains that Holder's mental health was thoroughly investigated by Drs. Reidy, Rothke, Wetzel and, apparently, Semone. Still, over ten years after the trial, Holder fails to specify what a better investigation would have found and how it would have impacted the outcome. Instead, he is content to criticize the investigation. If the investigation was deficient, this Court is entitled to a clear statement of what was missed and how it would have mattered.

Holder does not provide such a statement because nothing would have changed the outcome of his fair trial.

### 7. Claims That Trial Counsel Slept

This entire argument amounts to re-arguing this aspect of the §2255 motion. The record refutes Holder's present assertion that this Court's own recollections that Mr. Shaw was never sleeping "play[ed] . . . a central role in the Court's resolution of this claim." Holder's Rule 59(e) Motion at 30 (Doc. 90). On the contrary, this Court based its finding that Mr. Shaw "was not sleeping during periods of the trial" on the "evidence presented during the evidentiary hearing on this matter." Memorandum and Order at 85 (Doc. 87). This Court stated that "[i]n addition to this Court's recollection, the evidence presented at the evidentiary hearing was unpersuasive." Id. This Court's findings of fact in this regard were correct and far from manifestly incorrect as would be required to grant Rule 59(e) relief. This Court carefully analyzed the testimony of Ms. Herndon and Ms. Tatelli and found their assertion that Mr. Shaw was sleeping not persuasive. The sketchy nature of their recollections impeaches their credibility aside from their bias. Had they actually observed Mr. Shaw sleeping they would have recalled the circumstance, because they would have either jostled Mr. Shaw awake[4] or brought it to the Court's attention and ask for a break so Mr. Shaw could get a refreshment.

The distinction that Holder attempts to draw between the phrase "substantial portions of the trial" from this Court's Memorandum and Order and the phrase "not insubstantial portions"

---

[4]In essence, Ms. Herndon would have this Court believe that she observed Mr. Shaw sleeping and did nothing about it. Such a claim is not credible. Ms Herndon presents herself to this Court as an effective, professional and concerned advocate for Holder. This is credible. But that presentation impeaches her claim that she observed Holder's lead trial counsel sleeping and failed to act.

from <u>Burdine v. Johnson</u>, 262 F.3d 336, 341 (5th Cir. 2001) <u>is</u> a matter of semantics and not substance.  Holder argues that <u>United States v. Cronic</u>, 466 U.S. 648 (1984), requires a presumption of prejudice upon the slightest indication that counsel's eyes were closed. <u>Strickland</u> does not require trial counsel to be super-human, and even if Mr. Shaw had momentarily ever closed his eyes during the trial, such is not inconsistent with common human experience.  Holder is entitled to relief only if there was sleeping and if he was prejudiced by the sleeping.  The nature of the alleged sleeping here is far from specific enough to find that it even meets what Holder views as the lower standard of <u>Burdine</u>.  If there was any sleeping, he has failed to establish any prejudice.  The penalty phase was being presented primarily by Ms. Herndon, and even though Mr. Shaw presented the closing argument, Holder has not shown that Mr. Shaw slept during the penalty phase, or that Holder was prejudiced by Mr. Shaw's closing argument.  Indeed, Holder's entire prejudice argument hinges on convincing this Court that the <u>Cronic</u> standard of presumed prejudice applies.  Because it does not apply, and Holder fails to demonstrate actual prejudice, this Court correctly denied his petition for relief.

### 10. Mr. Shaw's Closing Argument

In this portion of his Rule 59(e) motion, Holder again simply re-argues the §2255 motion. In so doing, Holder again mis-characterizes the full panoply of arguments made by Mr. Shaw. Mr. Shaw did argue the mitigation evidence as this Court noted in its Memorandum and Order. Memorandum and Order at 94-96 (Doc. 87).  The Government continues to view the strategy chosen by Mr. Shaw as most likely to produce a life verdict: to emphasize the lack of evidence that Holder shot and killed Richard Helfin; and, to emphasize Holder's remorse for involvement in an episode that resulted in the death of Richard Heflin under circumstances in which Holder

neither expected not wanted Mr. Heflin to be harmed.  With all due respect to Ms. Herndon, Mr. Shaw's position to be the judge of which strategy to pursue in closing was far superior to Ms. Herndon's experience at that time.  Mr. Shaw's judgment was born not of seminars and capital defense playbooks, but a lifetime of successful criminal defense work and a lifetime of learning what motivated jurors.  Moreover, this Court's finding that Holder was not prejudiced by Mr. Shaw's decision to give the closing penalty argument was correct.

## Conclusion

This case and this §2255 already have a long history that spans over ten years (eleven and one-half years since the murder).  This Court's well-reasoned 100-page Memorandum and Order correctly determined the issues and Holder fails to bring forward any newly discovered evidence. Accordingly, his motion under Rule 59(e) should be denied.

Respectfully submitted,

CATHERINE L. HANAWAY
United States Attorney


*s/ Steven E. Holtshouser*
STEVEN E. HOLTSHOUSER #24277
Assistant United States Attorney
111 S. 10th Street, Rm. 20.333
St. Louis, Missouri 63102
(314) 539-2200

*s/ Joseph M. Landolt*
JOSEPH M. LANDOLT #6484
Assistant United States Attorney
111 S. 10th Street, Rm. 20.333
St. Louis, Missouri 63102
(314) 539-2200


## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2008 was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Christopher McGraugh
Leritz, Plunkert & Bruning, P.C.
555 Washington Avenue, Suite 600
St. Louis, MO  63101

Michael Gorla
Attorney at Law
720 Olive Street, Suite 2301
St. Louis, MO  63101

*s/ Joseph M. Landolt*
JOSEPH M. LANDOLT #6484
Assistant United States Attorney